974 So.2d 95 (2007)
Pinckney A. WOOD (President, Coalition of Louisiana Animal Advocates)
v.
Bob DEL GIORNO, WWL AM, and Sinclair Communications, Inc.
No. 2006-CA-1612.
Court of Appeal of Louisiana, Fourth Circuit.
December 19, 2007.
*97 Pinckney A. Wood, New Orleans, LA, In Proper Person, Plaintiff/Appellant.
Edwin W. Fleshman, Taylor Porter Brooks & Phillips, L.L.P., Baton Rouge, LA, for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, Judge EDWIN A. LOMBARD).
EDWIN A. LOMBARD, Judge.
In this defamation action, Plaintiff appeals the judgment of the district court, ,which granted Summary Judgment in favor of the Defendants, and denied Plaintiffs Motion for Summary Judgment. Our de novo review of the record supports the district court's judgment. Accordingly, we affirm.
Relevant Facts
The relevant facts of this case are not in dispute. Plaintiff, Pickney Wood ("Wood"), a humane rights advocate and educator, wrote to the producers of the Andre' Trevigne Show, a radio talk show which aired on WWL AM in New Orleans, hoping to be invited as an in-studio guest to discuss the topic of "canned hunts"[1] on the air. The show's producers contacted Wood and invited him to be a guest on the October 27, 1997 broadcast of the show. The normal format of the show was to have someone present a topic and then have listeners call in with comments or questions.
Wood was there representing the Coalition of Louisiana Animal Advocates, a nonprofit charity over which he was acting as president. Bob Del Giorno ("Del Giorno"), an avid hunter and outdoorsman, who is an employee of WWL and host of WWL's morning show, also joined the show as an on-air guest to give his opposing opinion on the topic. Things became heated during the show as Del Giorno and Wood argued their positions back and forth. Del Giorno continuously interrupted and contradicted Wood and made several rude comments to and/or about Wood including: "The man is a fraud. He is a complete fraud!;" "Everything you've said so far is out-and-out lying!;" and, "You're an idiot!" Wood, too, made some comments back to Del Giorno.
A year later, Wood filed suit against Del Giorno, WWL AM, and Sinclair Communications, Inc. ("Sinclair") ("collectively referred to as Defendants"), alleging that Del Giorno's comments were defamatory and that he is entitled to damages. Wood alleged that WWL and Sinclair were liable because they did nothing to make amends for Del Giorno's alleged defamatory remarks. Wood then filed a motion for summary judgment arguing that Del Giorno's comments constituted "defamation per se." In response, Defendants filed a cross-motion for summary judgment asserting that Wood's claim did not satisfy the elements required for a defamation action. The trial court heard the motions simultaneously and ultimately denied Wood's motion while granting the Defendant's motion. The court found that Del Giorno's comments *98 did not rise to the level of defamation per se and that his comment that Wood was an absolute fraud was not intended to accuse Wood of a crime. The court denied Wood's motion for reconsideration. This appeal followed.
Law and Argument
In his appeal, Wood argues that the trial court erred in denying his motion for summary judgment because there was no genuine issue of material fact at issue and that Del Giorno's comments were defamatory per se. Wood also argues that the trial court erred in granting Defendant's cross motion for summary judgment. Specifically, Wood argues that the Del Giorno's words were defamatory, Del Giorno is not entitled to the media defendant privilege, and that Del Giorno acted with actual malice. In the alternative, Wood argues that because discovery was not complete, the matter was not ripe for summary judgment.
Standard of Review and Summary Judgment Standard
Appellate courts review motions for summary judgment de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Champagne v. Ward, 03-3211, p. 4 (La.1/19/05), 893 So.2d 773, 776. Summary Judgment is appropriate when there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.Code Civ. Proc. art. 966(B). Summary judgment is favored under our law and shall be construed to secure the just, speedy, and inexpensive determination of every action. La. Civ. Proc. art. 966(A)(2).
Moreover, because of the chilling effect on the exercise of free speech, defamation actions have been found particularly susceptible to summary judgment. Kennedy v. Sheriff of East Baton Rouge, 05-1418 (La.7/10/06), 935 So.2d 669. The Louisiana Supreme Court has held that "summary adjudication is a useful procedural tool and an effective screening device for avoiding the unnecessary harassment of defendants by unmeritorious actions which threaten the free exercise of rights of speech and press." See Id. p. 25, 935 So.2d at 686.
Defamation
Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name. Costello v. Hardy, 03-1146, p. 12 (La.1/21/04), 864 So.2d 129, 139; Fitzgerald v. Tucker, 98-2313, p. 10 (La.6/29/99), 737 So.2d 706, 715; Trentecosta v. Beck, 96-2388, p. 10 (La.10/21/97), 703 So.2d 552, 559; Sassone v. Elder, 626 So.2d 345, 350 (La.1993). A successful claimant in a defamation action must establish the following elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. Trentecosta, 96-2388, p. 10, 703 So.2d at 559. The fault requirement is often set forth in the jurisprudence as malice, actual or implied. See Cangelosi v. Schwegmann Bros. Giant Super Markets, 390 So.2d 196, 198 (La.1980). If even one of the required elements of the tort is lacking, the cause of action fails. Costello, supra; See also, Douglas v. Thomas, 31,470, p. 3 (La.App. 2 Cir. 2/24/99), 728 So.2d 560, 562, writ denied, 99-0835 (La.5/14/99), 741 So.2d 661; Kosmitis v. Bailey, 28,585, p. 2 (La.App. 2 Cir. 12/20/96), 685 So.2d 1177, 1180. Even when a plaintiff makes a prima facie showing of the essential elements of defamation, recovery may be precluded if the defendant shows either that the statement was true, or that it was protected by a privilege, absolute or qualified. Doe v. Grant, 01-0175, p. 9 (La.App. 4 Cir. 1/29/03), 839 So.2d 408, 416, writ denied, 03-0604 (La.5/2/03), 842 So.2d 1102.
*99 Wood contends that Del Giorno's remarks, specifically his references to Wood as a liar and a fraud, are defamatory per se, or are, at the very least susceptible to defamatory meaning, since they tend to harm his professional reputation as an advocate and educator.
Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory per se. Kosmitis, 28,585 at p. 4, 685 So.2d at 1180; Lemeshewsky v. Dumaine, 464 So.2d 973, 975 (La.App. 4 Cir.1985). When a plaintiff proves publication of words that are defamatory per se, the elements of falsity and malice (or fault) are presumed, but may be rebutted by the defendant. Kosmitis, 28,585 at p. 4, 685 So.2d at 1180.
The trial court found that Del Giorno's comments did not rise to the level of per se defamation. The court specifically held that Del Giorno's comment that "He is an absolute fraud" is "not in the context of accusing Plaintiff of a crime." We agree with the trial court. Del Giorno made no reference to any criminal offense on the part of Wood. Del Giorno's reference to Wood being a fraud, or a liar, does not necessarily imply, in the mind of a listener of ordinary intelligence and sensitivity, that Wood is guilty of the crime of fraud. Moreover, we do not believe that Del Giorno's comments are of the type that would, by their very nature, injure Wood's personal or professional reputation as a humane rights advocate or educator. Thus, for these reasons, we find that Del Giorno's references to Wood as a fraud and a liar are not defamatory per se. Accordingly, we find that the trial court's judgment denying Wood's Partial Motion for Summary Judgment on the issue of defamation per se was correct.
We now turn to the question of whether Del Giorno's remarks, taken in context, were susceptible of defamatory meaning. Defamatory words are, by definition, words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule. Fitzgerald, 98-2313, p. 11, 737 So.2d at 716; Trentecosta, 96-2388, p. 10, 703 So.2d at 559. Words which convey an element of personal disgrace, dishonesty, or disrepute are defamatory. Fitzgerald, 98-2313, p. 11, 737 So.2d at 716. The question of whether a communication is capable of a particular meaning and whether that meaning is defamatory is ultimately a legal question for the court. Sassone, 626 So.2d at 352. The question is answered by determining whether a listener could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense. Id.
Defendants concede that Wood was treated very rudely by Del Giorno, but argue that Del Giorno's comments were not defamatory. Defendants contend that, considering the context of the situation wherein the comments were made, any reasonable person listening to the show would not believe that Del Giorno was actually accusing Wood of engaging in fraudulent behavior or dishonest business practices. Defendants argue that Del Giorno's comments about Wood were merely opinions or hyperbole, rather than facts, and are therefore, not actionable. We agree.
The First Amendment freedoms afford, at the very least, a defense against defamation actions for expressions of opinion. Cooksey v. Stewart, 41,336, p. *100 7 (La.App. 2 Cir. 8/23/06), 938 So.2d 1206, 1211. A pure statement of opinion, which is based totally on the speaker's subjective view and which does not expressly state or imply the existence of underlying facts, usually will not be actionable in defamation. Id., citing Bussie v. Lowenthal, 535 So.2d 378 (La.1988). Falsity is an indispensable element of any defamation claim, and a purely subjective statement can neither be true or false. Id. p. 1211-1212. The opinion may be ostensibly in the form of a factual statement if it is clear from the context that the speaker did not intend to assert another objective fact but only his personal comment on the facts which he had stated. Id. p. 1212. The crucial difference between statement of fact and opinion depends on whether ordinary persons hearing the statement complained of would be likely to understand it as an expression of the speaker's opinion, or as a statement of existing fact. Mashburn v. Collin, 355 So.2d 879, 885 (La.1977).
In considering the type of speech that falls beyond that which can support a defamation action, the United States Supreme Court has recognized that speakers may use language that is insulting, offensive, or otherwise inappropriate, but constitutes no more than "rhetorical hyperbole." Greenbelt Cooperative Publishing Ass'n v. Bresler, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970). Milkovich v. Lorain Journal Co., 497 U.S. 1, 18-21, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990).[2] Statements that are mere hyperbole cannot reasonably be understood to convey a false representation of fact. See Milkovich, 497 U.S. at 16-17, 110 S.Ct. 2695.
Del Giorno's remarks to and about Wood were based upon his subjective view and no underlying facts were either stated or implied. Clearly, in the context that they were made, the remarks were nothing more than opinions and hyperbole. Del Giorno's reference to Wood as an "idiot," for example, in the context of a heated discussion over a controversial topic, is merely an opinion and is not be likely to be understood by a normal listener to convey the false idea that Wood lacks normal mental capacity. Similarly, Del Giorno's remarks that Wood is a fraud and a liar cannot be understood to convey to the average listener that Wood is a person lacking moral character or untruthful in his business practices. It is unlikely that Del Giorno's remarks would have the effect of lowering Wood in the estimation of the community, of deterring others from associating with him, or otherwise exposing him to contempt or ridicule. The remarks were plainly abusive words not intended to be taken literally as statements of fact. Accordingly, we find that Del Giorno's remarks, while rude and insulting, are not defamatory.
Moreover, even if Del Giorno's comments could be considered defamatory, they are protected speech and are subject to a qualified privilege under the test of New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), which balances the freedom of expression against the right to defend against defamation. In *101 cases involving statements made about a public figure, the Sullivan Court held that a plaintiff must prove actual malice, that is that the defendant either knew the statement was false or acted with reckless disregard for the truth. Id. The Sullivan Court noted that "debate on public issues should be uninhibited, robust, and wide open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on public officials." Sullivan at 721.
In the cases that followed Sullivan, the Supreme Court broadened the scope of the constitutional privilege from "public officials" to "public figures," including "limited purpose public figures." See Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) and Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). A limited purpose public figure is an individual who voluntarily injects himself into a particular public controversy, such as by "inviting attention and comment," and thereby becomes a public figure in connection with that subject. See Trotter v. Jack Anderson Enterprises, Inc., 818 F.2d 431 (5th Cir.1987).
We find that pursuant to Sullivan and its progeny, Wood became a limited purpose public figure when he agreed to be on the Andre' show to discuss and debate the controversial topic of canned hunts and to represent his animal rights organization. The topic of canned hunts was a matter of public concern, which is evident by the fact that listeners of the Andre' show that day were. interested enough in the topic to call in and comment on the issue. Because Wood was a limited purpose public figure, the actual malice standard must be applied in determining the Defendants' liability. Here, Wood presented no credible evidence that Del Giorno acted with "actual malice" in making the comments. Without this showing, Wood cannot succeed in prosecuting this action against the Defendants. Accordingly, even if the comments were defamatory, which we deny, the district court did not err in granting Defendants' motion for summary judgment.
Wood finally attempts to avoid summary judgment by suggesting that additional discovery is needed to determine his status as a limited purpose public figure, Del Giorno's status as a media defendant, and the topic of canned hunts as a matter of public concern. This argument is unpersuasive since Wood has not. shown that further discovery would produce any new evidence creating an issue of fact. Because there are no material facts at issue, this matter was ripe for summary judgment.
Having found, as we do above, that Wood has not been defamed by the comments made by Del Giorno, we affirm the judgment of the trial court granting summary judgment to defendants and in denying plaintiff's motion for summary judgment. There are no genuine issues of material fact and the judgment, of the trial court is affirmed. Costs of this appeal are assessed to the Plaintiff, Pickney Wood.
AFFIRMED.
JONES, J., dissents in part and concurs in part.
JONES, J., dissents in part and concurs in part.
The trial court and now this Court, in considering defendant's motion for summary judgment, have determined the intent of a party. If intent is not fact based, what is? Further, intent is so fact intensive that it clearly lends itself to a determination that genuine issues of material fact preclude the granting of summary judgment M this matter.
*102 Further, I would correct the procedural error of plaintiff. He seeks to appeal the denial of his motion for summary judgment. Our review of a denial of a motion for summary judgment is under our supervisory judgment. Thus, as to the appeal of the denial of the plaintiff's motion for summary judgment, I would convert the appeal to a writ application for supervisory writ, and deny his writ application. In this regard I am in concurrence with the majority.
NOTES
[1] Canned hunts are commercial enterprises wherein animals are kept in fenced enclosures and "hunted" and killed by paying customers.
[2] Examples of hyperbole Include referring to the negotiating position of a real estate developer as "blackmail," Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler, 398 U.S. 6, 13-14, 90 S.Ct. 1537, 1541-42, 26 L.Ed.2d 6 (1970), defining a labor union "scab" to be a "traitor," Nat. Ass'n of Letter Carriers v. Austin, 418 U.S. 264, 284-86, 94 S.Ct. 2770, 2781-82, 41 L.Ed.2d 745 (1974), or publishing a parody of an advertisement referring to a public figure, Hustler Magazine v. Falwell, 485 U.S. 46, 50, 108 S.Ct. 876, 879, 99 L.Ed.2d 41 (1988). In each of these instances, no reasonable inference could be drawn that the individual identified in the statements, as a matter of fact, engaged in the conduct described.